UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-133 (MJD)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KHALID HASSAN MOHAMUD,

    Defendant.

**GOVERNMENT'S POSITION ON SENTENCING**

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Evan B. Gilead, Assistant United States Attorney, submits this sentencing position.

Defendant Khalid Hassan Mohamud (Mr. Mohamud) pleaded guilty on May 30, 2019, to Count 1 of the Information, bank robbery, in violation of 18 U.S.C. § 2113(a). The plea agreement stipulated the parties' belief that a base offense level of 20 applied, with a two-level enhancement because property was taken from a financial institution. Plea Agreement (Agreement) at ¶ 7. The parties disagreed regarding the application of a two-level "threat of death" enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(F). *Id.* In exchange for Mr. Mohamud's guilty plea, the parties understood that the Stearns County Attorney's Office would dismiss its case, regarding the same facts, at or before Sentencing. *Id.* at ¶ 1. The Agreement further anticipated that Mr. Mohamud's criminal history category would be either V or VI, and the total offense level would be between 19-21. *Id*

at ¶ 7. The anticipated guideline range of imprisonment would be between 57 to 96 months, depending on the applicable criminal history category and offense level. *Id.*

The PSR is inconsistent with the Agreement. Specifically, the PSR determined Mr. Mohamud to be a "career offender" pursuant to U.S.S.G. § 4B1.1. The PSR notes that should the Court find U.S.S.G. § 4B1.1 inapplicable, and U.S.S.G. § 2B3.1(b)(2)(F) to be applicable, the guideline range would be 77 to 96 months of imprisonment. The parties did not anticipate the application of U.S.S.G. § 4B1.1, and the government agrees that it is bound by the terms of the Agreement. As such, the government takes no position of the application of U.S.S.G. § 4B1.1 and believes an imprisonment term of 96 months is appropriate here.

## Discussion

The Court must determine what constitutes a reasonable sentence as guided by the factors of 18 U.S.C. § 3553(a). As a first step, the Court must determine the applicable Sentencing Guidelines. Although the Guidelines are advisory, the Court must "remain cognizant of them throughout the sentencing process." Gall v. United States, 552 U.S. 38, 50 n.6 (2007). Indeed, a court may "'rest [its] decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case' if the court finds that the case before it is typical." United States v. Robinson, 516 F.3d 716, 718 (8th Cir. 2008) (quoting Rita v. United States, 551 U.S. 338, 357 (2007)). In addition to considering the Guidelines, § 3553(a) requires the Court to analyze a number of factors, including the nature and

circumstances of the offense, the history and circumstances of the defendant, the need for the sentence to reflect the seriousness of the offense, the need for deterrence, the need to protect the public from further crimes of the defendant, and the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a).

## The Nature and Circumstances of the Offense

The Government agrees with the PSR's description of Mr. Mohamud's acts. *See* PSR ¶¶ 5-6. On February 22, 2019, Mr. Mohamud robbed a Wells Fargo Bank, located in St. Cloud, Minnesota. Mr. Mohamud approached the victim teller, K.A.B., and handed her the following note:



K.A.B. explained that Mr. Mohamud then kept his hands in his pockets, making it difficult for her to determine the veracity of his obvious threat. While complying with Mr. Mohamud's demands, K.A.B. activated the silent alarm, placed the money into an envelope, and refused to return the demand note when asked. The total loss, which Wells Fargo never recovered, was $2,800. At the time of the bank robbery, Wells Fargo and its funds were insured by the Federal Deposit Insurance Corporation (FDIC).

## Mr. Mohamud's Note Stating that He Possessed Two Weapons is a Threat of Death Under U.S.S.G. § 2B3.1(b)(2)(F)

Mr. Mohamud asserts that the demand note he handed to the teller stating, "…don't do anything stupid I have 2 weapons on me[.]," and keeping his hands in his pockets, suggesting he had the means or intent to use weapons during the robbery, is insufficient to warrant application of the enhancement under U.S.S.G. § 2B3.1(b)(2)(F). In essence, Mr. Mohamud argues that because his action are not analogous to the conduct described in Application note 6 to U.S.S.G. § 2B3.1, the enhancement should not apply. This is erroneous.

The true test lies in whether an objectively reasonable person in the position of the victim teller would have feared deadly force might be used if she did not comply. *United States v. Cadotte*, 57 F.3d 661, 662 (8th Cir. 1995) ("The enhancement does not require a subjective finding of the defendant's intent in making the threat, nor does it require an actual finding of the level of fear instilled by the threat."). The United States Sentencing Guidelines authorizes a two-point enhancement "if a threat of death was made" in the course of a robbery. *See* U.S.S.G. § 2B3.1(b)(2)(F)(2018). Application note 6 states:

> "A threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. Accordingly, the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", *"Give me the money or I'll Shoot you"*. . . . The court should consider that the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death.

U.S.S.G § 2B3.1, cmt. (n.6) (emphasis added).

In this case, it is undisputed that in robbing the Wells Fargo Bank on February 22, 2019, in St. Cloud, Minnesota, Mr. Mohamud entered the bank and gave the victim teller a note that read, "…don't do anything stupid I have 2 weapons on me," and kept his hands in his pockets. The entire text of the note, combined with Mr. Mohamud's actions after giving the victim teller the note, would cause a reasonable person in the teller's shoes to fear death. Mr. Mohamud appeared to have the ability to carry out a threat of death should the victim teller "try anything stupid." The combination of this phrase with the threat of using two weapons on the teller clearly supports a conclusion under the objective test required by the guideline. Additionally, the vagueness of the type of weapons that Mr. Mohamud possessed led the victim teller to believe that it could be any type of weapon, including one that could be used to kill or cause serious bodily harm.

For example, in *United States v. Smith*, the defendant gave the bank teller a note that said, "Please give me all your hundreds, fifties, and twenties." 973 F.2d 1374, 1375 (8th Cir. 1992). When the teller asked if the robber was joking, Smith replied, "You don't want to find out." Smith concealed his hand under his coat as if he might be holding a weapon. *Id.* The threat of death enhancement was upheld based on the combination of the robber's words and appearance. *Id.* at 1378.

The facts in the present case are similar to *Smith* where the Court relied on the combination of the defendant's verbal threat and the appearance that he was holding a gun

5

under his coat. Here, Mr. Mohamud also threatened the teller with his note and hid his hands from the teller's view.

The fact that the note does not use the word "death" does not mean the enhancement does not apply. *Id.* The *Smith* Court found that the threat conveyed in the note itself was sufficient to instill fear of death in the victim bank teller. *Id.* Similarly, this Court should find that Mr. Mohamud's demand note itself would instill fear of death.

Under the Sentencing Guideline Section 2B3.1(b)(2)(F), the language in Mr. Mohamud's demand note and contemporaneous actions were sufficient to instill the fear of death in the victim bank teller and warrant the application of the two-level "threat of death" enhancement at sentencing. Therefore, the Court should apply the two-level enhancement.

### **Defendant's Criminal History**

Mr. Mohamud has twenty-two misdemeanor and, now, eleven felony adjudications or convictions. PSR ¶¶ 30-71. Just 28 years old, Mr. Mohamud has had nearly forty contacts with law enforcement officers and the criminal justice system. Beginning at the age of eleven, Mr. Mohamud pleaded guilty to robbery. PSR ¶ 30. Since then, Mr. Mohamud's criminal activities have increased in amount and severity, culminating in this case. PSR ¶ 71. At the time of this instant offense, Mr. Mohamud was on parole and supervision for criminal conduct stemming from a Utah conviction. PSR ¶ 62. It is anticipated that Mr. Mohamud, will at some future date, be transported to Utah for a parole revocation hearing and disposition.

Mr. Mohamud's criminal history demonstrates that, taken with the instant Information and conviction, even terms of lengthy imprisonment have not curbed his criminality. The lesson, perhaps, has not been learned. Mr. Mohamud's actions speak clearly: He does not care for the rule of law.

Mr. Mohamud, in his adulthood, has spent more time in custody than out. At age 18, Mr. Mohamud started his revolving door of incarceration with a slew of cases[1] and convictions that kept him in custody for over a year. PSR ¶¶ 51-57. Mr. Mohamud had many opportunities to reflect on the circumstances that led to that period of incarceration. Instead of developing goals and plans to not lead a crime ridden lifestyle, Mr. Mohamud continued getting arrested and convicted in multiple cases.

It is unclear if Mr. Mohamud's prior anger issues have been resolved and to what extent they have contributed to his prolonged criminal behavior. *See* PSR ¶ 73. While incarnated and serving prison time for other offenses, Mr. Mohamud committed two additional crimes of aggravated assault of a prisoner[2], which ultimately led to an extended prison sentence in the State of Utah. Most notably, and egregiously, of these two convictions is Mr. Mohamud's aggression towards law enforcement officers. In February 2011, Mr. Mohamud assaulted a Utah Department of Corrections staff, at one point

---

[1] The convictions included charges of retail theft, unlawful possession of alcohol by a minor, supplying alcohol to an intoxicated person, driving without a valid license, failure to stop at the command of police, third-degree burglary, and criminal mischief.
[2] PSR ¶¶ 60-61.

7

attempting to throw the staff member off a railing and onto a lower level. The assault, which Mr. Mohamud pled guilty to, was thwarted.

Mr. Mohamud was eventually paroled[3] on September 24, 2018, for his multiple offenses in Utah. Not long after being granted parole, Mr. Mohamud was arrested for new crimes, including lying to law enforcement officers. On October 12, 2018, a parole violation was filed and on November 13, 2018, Mr. Mohamud was returned to custody. On January 29, 2019, Mr. Mohamud was again released on parole from Utah. As this Court is well aware, Mr. Mohamud committed this bank robbery on February 22, 2019, less than a month after being released from custody. The evidence is abundantly clear: Mr. Mohamud has no intention of becoming a law abiding member of society. Currently, there is an active parole violation warrant in Utah for not only committing a bank robbery, but for fleeing Utah jurisdiction and supervision. Through his vast criminal record and

---

[3] Utah uses a parole and indeterminate prison system. *See https://corrections.utah.gov/index.php?option=com_content&view=article&id=1049&Itemid=169.* The Utah Board of Pardons and Parole determines the length of an offender's incarceration and probation or parole. The board consists of five full-time and five part-time members. The board is a separate entity from the Department of Corrections and makes its decisions independently.

Sentences are set for a time range rather than a specific time period. The sentence for an offender who commits a third-degree felony, for example, may range from 0 to 5 years.

The board decides when to release an offender as well as any conditions of parole the offender must abide by if released prior to completing a sentence. The board has the authority to pardon, commute or reduce sentences; impose restitution, fines and forfeitures; issue arrest warrants for parole violations; impose sanctions for parole violations; revoke parole and return parolees to prison; and conduct evidentiary hearings. Within six months of commitment to prison, the board will set an original hearing date for an offender.

8

repeated violent conduct, Mr. Mohamud has shown this Court that even long periods of incarceration do not deter behavior, nor is supervision adequate enough to curb his appetite for committing crimes. Each and every time, Mr. Mohamud has closed the door on the opportunities afforded to him. Based on this repeated flaunt of the law, this Court should not grant Mr. Mohamud leniency in sentencing. As indicative in the twice granting of parole, Mr. Mohamud takes leniency as an opportunity to wreak havoc within our communities.

## Defendant's Characteristics

According to Mr. Mohamud, he was born in war-torn Somalia and raised by a single parent after the death of his father. PSR ¶ 72. Mr. Mohamud's childhood was admittedly chaotic as he moved from Somalia to a Kenyan refugee camp and then to the United States. There are a vast number of juvenile records available which show that Mr. Mohamud struggled greatly during childhood with anger issues, school attendance, disciplinary issues, and problems with authority figures. A couple of times, Mr. Mohamud had to be removed from home by the State of Utah due to behavioral issues. The juvenile behavior, and Mr. Mohamud's involvement in the Utah juvenile criminal justice system, unfortunately created a foundation for his adult criminal record.

There is scant information within the PSR regarding the current relationship that Mr. Mohamud has with his immediate family. From the information provided within the PSR, and from investigators, many individuals over many years have attempted to help Mr. Mohamud deal with his anger and impulse control issues. That failed many times. It

9

should be noted that when Mr. Mohamud fled Utah and came to Minnesota to commit the bank robbery, he used his brother's Lyft account to call a ride-share in order to take him to the bank, for the purposes of the robbery, and back to his mother's home. This further illustrates that the trust that individuals place in Mr. Mohamud is often returned with further criminal activity.

It is true that Mr. Mohamed has lived an extraordinarily difficult life. There have been genuine times of discomfort and displeasure that placed great weight on his mind and spirit. However, Mr. Mohamud has a family foundation that was once, and still might be, willing and able to guide him. It should be no excuse to continue this level of criminal behavior due to the hardships one has lived, especially if there are those willing to help extricate him from the revolving door. At every turn, throughout his childhood and now, Mr. Mohamud has neglected to nurture those relationships, choosing instead to further extend his criminal history in Utah, and now Minnesota.

### **Reflecting the Seriousness of the Offense; Promoting Respect for the Law; Providing Just Punishment; Deterring Crime; Protecting the Public**

It goes without saying that bank robbery - note job or armed - is a violent crime. Mr. Mohamud, by his note and actions, insinuated bodily harm to the victim teller. His actions disrupted the business operations of Wells Fargo and he took property that did not belong to him. Standing alone, the Court should not tolerate Mr. Mohamud's behavior. Coupled with the timeline of his criminal history, Mr. Mohamud's actions, show that he has no respect for authority, the safety of the public, nor the desire to better himself. Mr. Mohamud is escalating, and though no one was hurt in this bank robbery, the threat was

real, and the message was terrifyingly received. Mr. Mohamud must be deterred and, given his criminal history, he is likely a risk to reoffend if given a lenient sentence. Throughout his adult life, every piece of trust that has been placed in Mr. Mohamud has been rewarded with more criminal behavior.

## **Recommendation**

An appropriate sentence protects our community from Mr. Mohamud's repeated conduct. An appropriate sentence will promote respect for the rule of law and hopefully, and finally deter Mr. Mohamud from committing new offenses. Based on Mr. Mohamud's repeated, lifetime of criminal conduct and its negative consequences, the Government respectfully request a sentence of 96 months, as a sentence that is sufficient, but not greater than necessary.

Dated: November 4, 2019

                                            Respectfully Submitted,

                                            ERICA H. MacDONALD
                                            United States Attorney

                                            */s/ Evan B. Gilead*

                                            BY: EVAN B. GILEAD
                                            Assistant U.S. Attorney
                                            Attorney ID No. 95971 FL